UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROL FLANNIGAN** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 22-3080** |
| **UNIVERSAL STEEL AMERICA, INC., ET AL.** | **SECTION: "J"(5)** |

**ORDER AND REPORT AND RECOMMENDATION**

Before the Court is the Rule 12(b)(6) Motion for Partial Dismissal (rec. doc. 12) filed by Defendant Universal Steel America, Inc. ("Universal"). Plaintiff has filed no opposition to the motion. Also before the Court is Plaintiff's Motion for Leave to File First Amended Complaint. (Rec. doc. 15). Universal opposes Plaintiff's motion (rec. doc. 16), and Plaintiff has filed a reply. (Rec. doc. 21). Having reviewed the pleadings and the case law, the Court recommends and finds as follows.

**I.     Factual Background**

Reviewing all facts in the light most favorable to Plaintiff – as this Court must do[1] – the complaint alleges as follows. Universal is a wholesale provider of specialty steel products to industrial customers throughout the United States. (Rec. doc. 1 at ¶ 3). Plaintiff, Carol Flannigan ("Plaintiff"), was employed by Universal from June 2016 to June 2, 2021 as an Inside Sales Representative and telecommuted to Universal's Houston office from her home in Laplace, Louisiana. (*Id.* at ¶¶ 8, 14-15). According to Plaintiff, her duties as an Inside Sales Representative included processing steel orders assigned to her. (*Id.* at ¶ 22).

Plaintiff's compensation included a salary plus monthly commissions. (*Id.* at ¶ 28). Plaintiff earned commissions on an "all or nothing" basis each month. (*Id.* at ¶ 29). She

---
[1] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014).

would receive no commission if she failed to hit her monthly sales target, but if she hit her target, she would receive a commission equaling a percentage of all of her monthly sales. (*Id.*). Plaintiff's ability to earn a commission at Universal was contingent on whether she was assigned custom or standard orders. (*Id.* at ¶¶ 22-35). Custom orders are more complex and require specialized knowledge. (*Id.* at ¶¶ 23-24). Plaintiff asserts that the custom orders are more difficult and time-consuming and typically result in lower commissions. (*Id.*). Standard orders, on the other hand, are orders of "straight plate," which are not technically challenging or time consuming, and result in higher commissions. (*Id.*).

Plaintiff alleges that Universal management – Randy Butler, Universal's President ("Butler"); Timothy Garcia, Universal's General Manager ("Garcia"); and Phillip Strickhausen, Universal's Sales Manager ("Strickhausen") – were in charge of assigning orders to Inside Sales Representatives like Plaintiff.[2] (*Id.*). Plaintiff contends that Universal management assigned her more custom orders than any other Universal Inside Sales Representative and assigned high-revenue, standard orders to her male counterparts. (*Id.*). As a result, Plaintiff's ability to earn a monthly sales commission was "significantly constrained," resulting in Plaintiff earning less than "similarly situated male IS Reps who performed equal work." (*Id.* at ¶ 34).

In February 2019, Plaintiff alleges that she was targeted for being female. Specifically, Universal created a series of Employee Disciplinary Notices ("EDN") to imply

---

[2] Plaintiff also sued a Melanie Madden Parish. On March 16, 2023, this Court issued a Report and Recommendation in which it recommended that the four individual Defendants be dismissed for failure to prosecute under Federal Rule of Civil Procedure 4(m). (Rec. doc. 13). On April 6, 2023, the District Court adopted the Report and Recommendation, thereby dismissing these four individuals from the lawsuit. (Rec. docs. 17, 19).

2

that Plaintiff was prone to errors. (*Id.* at ¶ 47). That same month, Plaintiff was issued an EDN based on excessive Non-Conformance Reports ("NCRs") – described as Universal's practice for documenting errors or mistakes by sales representatives that result in a loss or added cost to the company. (*Id.* at ¶¶ 47-49). She maintains that the EDN was unjust because those NCRs only resulted in a $260.00 loss to the company, and one of the NCRs was not her fault. (*Id.*). She argues that the loss was Universal's fault because the company failed to notify her of a customer's policy change related to the grade of product the customer would accept. (*Id.*).

In June 2019, after issuance of the EDN for excessive NCRs, Plaintiff was issued another NCR after she mistakenly sent a duplicate shipment to a customer. (*Id.* at ¶¶ 50-52). Plaintiff claims Butler insisted on issuing an NCR and instructed that 100% of fault for the mistake be allocated to Plaintiff, while no male Universal employees that "touched the order" was held responsible. (*Id.* at ¶ 52). Plaintiff maintains that the decision to assign all the blame to her was part of Universal's efforts to target females in the company. (*Id.* at ¶¶ 54-55). Specifically, she claims that between June 2019 and July 2020, two female sales employees quit, and another two were terminated. (*Id.*). During the same time period, only one male sales employee left the company, and Universal replaced him with another male. (*Id.*).

Plaintiff's fears were confirmed when she received another EDN in August 2020 for excessive NCRs and placed on indefinite probation. (*Id.* at ¶¶ 56-58). She contends that this EDN falsely stated that she had been verbally warned with termination the prior year relating to her excessive NCRs. (*Id.*). Again, Plaintiff asserts that no fault was assigned to male employees involved with the orders related to this EDN. (*Id.*).

3

After receiving the August 2020 EDN, Plaintiff began to experience insomnia, anxiety, and panic attacks. (*Id.* at ¶ 60). In October 2020, Plaintiff suffered multiple strokes. (*Id.* at ¶ 63). Despite informing Universal of her illness, Universal management harassed Plaintiff with phone calls, emails, and demands for medical records. (*Id.* at ¶ 65). Plaintiff further claims that despite continuing headaches, weakness, and vision problems, she returned to work on October 26, 2020 out of fear of losing her job. (*Id.* at ¶ 72). Plaintiff went back on leave the next day, October 27, 2020, after a doctor's visit confirmed that she had suffered a stroke. (*Id.* at ¶ 73). Thereafter, Plaintiff claims Universal continued to demand her medical records, which led Plaintiff to believe her employment would be terminated if she did not promptly return to work. (*Id.*).

When Plaintiff returned to work on or around December 21, 2020, she produced a doctor's note to Universal confirming her continuing vision issues, headaches, difficulty controlling her hand, pain, and tightness. (*Id.* at ¶ 78). Universal did not follow through on accommodations that it had agreed to provide Plaintiff when she returned to work, such as time off for therapy appointments and additional oversight of her work. (*Id.* at ¶¶ 79-80). Universal continued to convey concerns over Plaintiff's productivity into 2021, causing her continuing anxiety, headaches, and vision problems. (*Id.* at ¶¶ 86-88).

Plaintiff received another EDN in March of 2021 that exacerbated her anxiety and physical symptoms. (*Id.* at ¶ 93). Plaintiff responded to this EDN on April 7, 2021, claiming that Universal's failure to provide her accommodations hindered her job performance and that she believed Universal was targeting her and discriminating against her due to her gender, disability, and possibly age. (*Id.* at ¶ 94). Universal then asked Plaintiff to travel to Houston to discuss her allegations, accommodations that she needed, and Universal's

4

concerns with Plaintiff's job performance. (*Id.* at ¶ 96). Universal also began to send Plaintiff policies that she had to acknowledge and that other Universal employees were not required to acknowledge until weeks after her. (*Id.* at ¶¶ 100-101). Plaintiff believes the policies were intended to rationalize Plaintiff's March EDN even though the policies did not exist at the time Plaintiff received that EDN. (*Id.* at ¶ 102).

On May 26, 2021, Plaintiff asked for and was allowed to take two days off to celebrate her birthday with friends. (*Id.* at ¶ 106). Universal then terminated Plaintiff on June 2, 2021 and informed her that it was due to performance. (*Id.* at ¶ 107).

On June 7, 2021, five days after her termination, Plaintiff filed a Charge of Discrimination (the "First Charge") with the Equal Employment Opportunity Commission ("EEOC"). (Rec. doc. 12-1). In the First Charge, Plaintiff named Universal as the discriminator, checked the boxes for discrimination based on sex, age, disability, and retaliation, and asserted that Universal discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, because she was female, disabled, and sought accommodations for her disability. (*Id.*). Specifically, Plaintiff claimed that she was discriminated against "because of [her] sex, female, in violation of Title VII" and "discriminated against and retaliated against in violation of the [ADA]." (*Id.*). Plaintiff received her first notice of rights to sue as a result of her First Charge on June 9, 2021 ("First Notice"). (Rec. doc. 12-2).

Plaintiff filed a second Charge of Discrimination (the "Second Charge") with the EEOC on March 24, 2022. (Rec. doc. 12-3). As in her First Charge, Plaintiff named Universal as the discriminator, checked the boxes for discrimination based on sex, age,

disability, and retaliation, and asserted that Universal discriminated and retaliated against her in violation of Title VII and ADA because she was female, disabled, and sought accommodations for her disability. (*Id*.). Plaintiff was issued her second notice of right to sue letter from the EEOC on June 2, 2022 ("Second Notice"). (Rec. doc. 12-4).

Plaintiff filed this lawsuit on August 31, 2022, alleging, *inter alia*, that Universal violated the ADA and Title VII by discriminating and retaliating against her on the basis of her sex (female), her disability, and her request for an accommodation. (Rec. doc. 1). Plaintiff asserts 15 counts against Universal, only one of which applies to the four individual Defendants. Plaintiff also asserts a claim for intentional infliction of emotional distress ("IIED").

## II.   The Motion to Amend

The Court will first consider Plaintiff's motion for leave to amend (rec. doc. 15) as it may impact Defendant's partial motion to dismiss. (Rec. doc. 12). Plaintiff's proposed amendment would dismiss Counts 3, 4, 5, 6, and 7, dismiss the individual Defendants, and present and clarify additional facts to support her claims for Title VII retaliation (Count 9), ADA retaliation (Count 10), and IIED (Count 15). Universal does not oppose the motion to the extent it seeks to dismiss the individual counts and the individual Defendants,[3] but it opposes the amendment as to the claims for Title VII retaliation (Count 9), ADA retaliation (Count 10), and IIED (Count 15).

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course" within 21 days of service or 21 days after service of a

---

[3] As noted, this Court recommended dismissal of the individual Defendants (rec. doc. 13), which the District Court adopted. (Rec. docs. 17, 19). To the extent that the motion to amend and the motion to dismiss address this issue, the Court will trat that portion of the motion as moot.

6

responsive pleading or motion under Rule 12(b), (e), or (f). Fed . R. Civ. P. 15(a)(1)(A), (B). In all other cases, a party may amend its pleading with the opposing party's written consent or leave of court, which leave should be freely granted when justice so requires. *Id.* 15(a)(2). As Plaintiff requested this amendment outside of the 21 days to plead as a matter of course and does not have consent, this motion for leave to amend is governed by Rule 15(a)(2).

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires." *Id.* The court must balance the difficult task of assuring a party a fair opportunity to present its claims and defenses while at the same time protecting the district court from being imposed upon by the presentation of theories seriatim. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citation omitted). Denial of leave to amend is reviewed for abuse of discretion. *Carroll v. Fort James*, 470 F.3d 1171, 1173-74 (5th Cir. 2006) (citation omitted). A "district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). Absent a "substantial reason," the court's discretion "'is not broad enough to permit denial'" of a request for leave to amend. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Martin's Herend Imps., Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)).

Leave to amend is not, however, automatic. *Avatar Expl., Inc. v. Chevron USA, Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (citation omitted). While Rule 15 favors granting leave to amend, denial of leave is justified in certain circumstances, such as when a movant unduly

delays or acts with bad faith or dilatory motive. *Id.* (citation omitted). The five factors considered in determining whether leave to amend is appropriate or whether there is substantial reason to deny the request are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 340 F.R.D. 554, 559–60 (E.D. La. 2022).

### A. Undue Delay

Universal first raises undue delay as a reason to deny Plaintiff's motion to amend. Rule 15(a)(2) does not itself impose a specific time limit on seeking leave to amend, *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004), and the fact that an amendment is filed before any potentially applicable scheduling deadline does not by itself make a claim timely. *Javaid v. Pantry, Inc.*, No. 12-2481, 2013 WL 12228711, at * (E.D. La. Oct. 7, 2013) (citing *Mayeaux*, 376 F.3d at 427). A litigant's failure to assert a claim as soon as it could have done so, however, is a proper factor to consider in deciding whether to grant leave to amend. *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982). As courts have recognized, at some point, a plaintiff's delay can be procedurally fatal. *Smith*, 393 F.3d at 595 (citing *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)). In such a case, a plaintiff must establish that the delay "was due to oversight, inadvertence, or excusable neglect." *Id.* (citation omitted).

This Court finds no undue delay here. While Universal may be frustrated by Plaintiff's failure to file the motion to amend during earlier discussions between Counsel, thereby leaving Universal no choice but to file the partial motion to dismiss, this lawsuit is

8

in its infancy, and no scheduling order has yet been issued. Indeed, the majority of the amended complaint favors Universal in that it dismisses five claims and streamlines the lawsuit. The Court recognizes that Plaintiff should have filed her amended complaint after promising counsel for Universal that she would, but this Court cannot fault her for any undue delay this early in the litigation.

**B. Futility**

Defendants also argue that any attempt to amend Counts 9, 10, and 15 would be futile. Counts 9, 10, and 15 correspond to Counts 4, 5, and 10 in the proposed amended complaint. In the proposed complaint, Count 4 is Plaintiff's Title VI retaliation claim, Count 5 is her ADA retaliation claim, and Count 10 is her IIED claim. Futility alone provides a sufficient basis for denying leave to amend, and amended claims are futile if they would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Lafayette City-Par. Consol. Gov't v. United States*, No. 6:22-CV-01127, 2022 WL 3570927, at *2 (W.D. La. Aug. 18, 2022) (citing *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is viewed with disfavor and is therefore rarely granted. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty.*

*Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But in deciding whether dismissal is warranted the Court will not accept conclusory allegations in the complaint as true. *Id.* at 502-03 (citing *Iqbal*, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted). The Court now applies this standard to the Title VII and ADA retaliation claims and the claim for intentional infliction of emotional distress ("IIED") in Plaintiff's motion to amend.

### 1. Title VII and ADA retaliation claims

Universal argues in both its opposition to the motion to amend and its motion to dismiss that the amendments to Plaintiff's Title VII and ADA retaliation claims are time-barred. Universal maintains that Plaintiff included retaliation in her first EEOC charge filed on June 7, 2021. (Rec. doc. 12-2). In that first EEOC charge, Plaintiff alleged that "[o]n April 7, 2021, I submitted my response to the write up" and "[i]t was only after I told Universal that I planned on filing a complaint with the EEOC that it decided to do a 'fact finding investigation.'" (*Id.*). Plaintiff received her notice of right to sue based on this charge on June 9, 2021. (Rec. doc. 12-3). Plaintiff filed this lawsuit on August 31, 2022. Universal thus contends that Plaintiff failed to file suit within 90 days after receiving her notice of right to sue and thus her claims are time-barred.

In her reply to Universal's opposition to her motion to amend (rec. doc. 23), Plaintiff argues that Universal ignores that her amended complaint alleges that her Title VII and ADA retaliation claims are based on conduct that occurred after April 7, 2021 and through the date of her termination on June 2, 2021. (Rec. doc. 22 at 3). Plaintiff included this retaliatory behavior in her second EEOC charge filed on March 24, 2022 (rec. doc. 12-4) and details the conduct in her amended complaint. (Rec. doc. 15-1 at 22-3, 25). Plaintiff received her notice of right to sue on this charge on June 2, 2022. (Rec. doc. 12-5).

Title VII and ADA claims are governed by a statute of limitations, that requires that suit be brought within 90 days of a plaintiff's receipt of the right to sue. 42 U.S.C. § 2000e-5(f)(1). If a plaintiff files suit after the 90-day statute of limitations, a court will dismiss the plaintiff's Title VII and ADA actions. *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916,

11

918 (5th Cir. 2009); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir.2002). The 90-day statutory period is strictly construed. *Id.*

Plaintiff filed two charges of discrimination with the EEOC. The first, encompassing facts between November 20, 2021 and April 7, 2021, was filed on June 7, 2021. Plaintiff received her notice of right to sue based on these facts on June 9, 2021. Plaintiff thus had 90 days from June 9, 2021 to file suit based on the facts in her first EEOC charge. As the Fifth Circuit and other courts have held, the complainant is on notice from the date of receipt of the first dismissal letter that she has 90 days to file suit on the claims made to the EEOC, unless her second right to sue letter is issued pursuant to a reconsideration of the merits. *See Washington*, 351 F. App'x at 918; *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997); *Sparks v. Lowe's Home Ctr., Inc.*, 341 F. Supp. 2d 671, 674 (E.D. Tex. 2004). Plaintiff's second notice of discrimination to the EEOC, while including many of the facts from the first notice of discrimination, does not constitute a reconsideration of the merits. (Rec. doc. 12-5). Accordingly, Plaintiff had 90 days from June 9, 2021 to file suit based on the first notice of right to sue. Plaintiff did not file suit until August 31, 2022, well beyond the 90 days as required by law. Accordingly, any Title VII and ADA retaliation claims are time barred before April 7, 2021.

However, Plaintiff argues that "[a]ll of the retaliatory acts comprising the basis of Plaintiff's Title VII and ADA retaliation claims in her proposed Amended Complaint took place after April 7, 2021 – the date on which Plaintiff notified [Universal] that she had contacted the EEOC – and were included in her second Charge of Discrimination which was filed March 24, 2022." (Rec. doc. 20-3 at 3). Plaintiff received her notice of right to sue based on her second EEOC charge on June 2, 2022 (rec. doc. 12-5), and she filed suit on

August 31, 2022, which is precisely the ninetieth day after June 2, 2022. Accordingly, only the claims in Plaintiff's amended complaint that occurred after April 7, 2021 and through June 2, 2021 – by Plaintiff's own admission – are timely.

### 2. IIED

To state a claim for IIED under Louisiana law,[4] a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020); *Flettrich v. Chevron Oronite Co., L.L.C.*, No. CV 21-1986, 2022 WL 1320433, at *6 (E.D. La. May 3, 2022); *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019); *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

Recognition of a cause of action in a workplace setting is "usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *See id.*; *see also Russell v. Chevron U.S.A., Inc.*, No. CV 18-4157, 2018 WL 4816151, at *6 (E.D. La. Oct. 4, 2018) (citing *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000)) (noting that "in a workplace setting," Louisiana courts have "limited the cause of action to cases which

---

[4] Universal asserts that Plaintiff argues that Texas law applies to her claim of IIED. This Court finds no such argument in Plaintiff's bare-bones pleadings.

involve a pattern of deliberate, repeated harassment over a period of time."); *Bustamento v. Tucker*, 607 So. 2d 532, 538 (La. 1992) (explaining that "this has been characterized as a sliding scale approach under which even relatively 'mild' harassment may become tortious if continued over a substantial period of time").  Moreover, cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress."  *See Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1027 (La. 2000).

Universal contends that Plaintiff alleges only two acts after April 7, 2021 that allegedly support her IIED claim.  She alleges that (1) Universal failed to attend Plaintiff's unemployment hearing before the Louisiana Workforce Commission on March 10, 2022, and (2) Universal failed to inform Plaintiff that it had switched COBRA administrators, which caused Plaintiff to lose three months of health insurance coverage and have a claim denied.

To the extent that any of Plaintiff's allegations of IIED accrued before August 31, 2021 (one year before Plaintiff filed this lawsuit on August 31, 2022), the claim has prescribed under Louisiana's one-year liberative prescriptive period for torts.  La. Civ. Code art. 3492; *Oramous v. Mil. Dep't*, No. Civ. A. 05-3677, 2007 WL 1796194, at *6 (E.D. La. June 18, 2007).  Plaintiff's amended complaint generally alleges IIED from October 2020 through December 2020.  The claim has thus on its face prescribed.

However, Plaintiff argues that the cumulative effect of Universal's actions – including the two allegations outlined above – render Plaintiff's claims timely.  A continuing tort is one "where the operating cause of injury is a continuous one and gives rise to successive damages."  *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456 (La. 2008) (quoting *Crump*

14

*v. Sabine River Auth.*, 737 So. 2d 720, 726 (La. 1999)); *see also Michot v. Edward D. Jones & Co., L.P.*, No. 1:18-CV-0921, 2018 WL 11507827, at *3 (W.D. La. Sept. 20, 2018), *report and recommendation adopted*, No. CV 18-0921, 2018 WL 11507826 (W.D. La. Oct. 10, 2018). In such cases, "prescription dates from the cessation of the wrongful conduct causing the damage." *Crump*, 737 So.2d at 726.

The Court finds that the only two allegations of IIED that would render Plaintiff's claim timely – the failure to attend the unemployment hearing and the failure to notify Plaintiff of its change in its COBRA administrator – do not rise to the level necessary to establish a claim for IIED. Plaintiff's allegations do not constitute the type of "extreme and outrageous" behavior necessary to sustain a claim for IIED. *See White*, 585 So. 2d at 1209. Courts applying Louisiana law have dismissed allegations asserting far more egregious types of workplace conduct. *See Russell*, 2018 WL 4816151, at *7 (E.D. La. Oct. 4, 2018) (finding (1) defendant's commencement of a workplace investigation into plaintiff's behavior; (2) manager's allegedly false statement during plaintiff's employee evaluation that she "had a problem working with her peers;" (3) defendant's allegedly false statement in plaintiff's termination letter that she "has exhibited an ongoing pattern of behavioral issues negatively impacting her performance and the business;" and (4) the allegedly fraudulent and defamatory statements that employees for defendant made to their coworkers, the EEOC, and the LDL/LWC after plaintiff was terminated did not constitute IIED); *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 354 (E.D. La. 2016) (finding former police officer's allegations that police department disciplined him, denied him a promotion, demeaned him to the public, and "unnecessarily criticiz[ed] him" did not state claim for intentional infliction of emotional distress); *Stewart v. Par. of Jefferson*, 668 So. 2d 1292,

15

1294 (La. Ct. App. 1996) (affirming trial judge's dismissal of plaintiff's claim that his employer raised his voice while questioning plaintiff, increased plaintiff's workload, and pressured plaintiff to take a demotion that ultimately led to his termination); *see also Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 435 (5th Cir. 2013) (noting that "a termination in itself is not extreme and outrageous" behavior). Plaintiff's two allegations of IIED after prescription had run fail to rise to the level of extreme and outrageous conduct that would maintain a cumulative effect of IIED (or continuing tort) on Universal's part. Accordingly, Plaintiff's IIED claim is futile.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (rec. doc. 15) is **GRANTED AS UNOPPOSED IN PART**, **DENIED IN PART**, and **DISMISSED AS MOOT IN PART**. The motion is granted as unopposed with regard to the voluntary dismissal of Counts 3-7. The motion is dismissed as moot in part with regard to the four individual Defendants, whom this Court has already dismissed. (Rec. docs. 13, 19). The motion is also granted in part with regard to Plaintiff's Title VII and ADA retaliation claims based only on facts that occurred from April 7, 2021 through June 2, 2021. The motion is denied with regard to Plaintiff's IIED claim.

**IT IS FURTHER RECOMMENDED** that Universal's Rule 12(b)(6) Motion for Partial Dismissal (rec. doc. 12) be **DISMISSED WITHOUT PREJUDICE AS MOOT** given this Court's ruling on the motion to amend.

**NOTICE OF RIGHT TO OBJECT**

With regard to this Court's recommendation on the motion for partial dismissal, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[5]

New Orleans, Louisiana, this 29th day of June, 2023.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.